

1 | **Franz A. Wakefield,** *P r o   S e*
2 | **COOLTvNETWORK.COM™, INC.**
  | **The** *ClickVideoShop™* **Patent:** <u>U.S. 007,162,696 B2.</u>
3 | 17731 North West 14th Court
4 | Miami, Florida 33169
  | Tel: (305) + 624.3282
5 | <u>FranzWakefield@cooltvnetwork.com</u>
6 |
7 |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA.

Case №:

FRANZ A. WAKEFIELD,                    Plaintiff,

*CV09-8003*

**COMPLAINT**

**FOR TRADE SECRET MISAPPROPRIATION, RICO COPYRIGHT INFRINGEMENT (PURSUANT TO ANTICOUNTERFEITING CONSUMER PROTECTION ACT OF 1996, PUB. L. NO 104 - 153 § 3, 110 STAT. 1386 AND RICO § 1962(d)), INJUNCTIVE RELIEF, AND BREACH OF AN ORAL CONTRACT MADE IN FLORIDA**

*v.*

APPLE INC.,                    Defendants,

STEVE JOBS,

And

SARAH JESSICA PARKER

LODGED

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

-1-

COMPLAINT

Plaintiff, Franz A. Wakefield, ("WAKEFIELD"), *Pro Se* for this Complaint, alleges as follows:

PARTIES

<u>PLAINTIFF</u>

1.    Plaintiff, Franz A. Wakefield [trade secret and copyright owner] is now, and at all times mentioned in this complaint; a citizen of the United States, born on the date of August 31, 1974, and residing at 17731 North West 14th Court Miami-Dade, County Florida 33169.

<u>DEFENDANTS</u>

2.    Defendant, Sarah Jessica Parker, "SJP," [individual trade secret appropriator, racketeer, and copyright infringer] is now, and at all times mentioned in this complaint an Entertainer who is represented by Ira Shreck, Esq. of Shreck Rose Dapello Adams & Hurwitz LLP located 1790 Broadway 20th Floor in New York, New York 10019.

3.    Defendant, Steve Jobs [individual trade secret appropriator, racketeer, and copyright infringer] is now, and at all times mentioned in this complaint, the CEO and Co-Founder of Apple Inc. employed at 1 Infinite Loop in Cupertino, California 95014.

4.    Defendant, Apple Inc. [electronic merchandise and software development

corporation, trade secret appropriator, racketeer, and copyright infringer] is now, and at all times mentioned in this complaint conducts its principal place of business at 1 Infinite Loop located at Cupertino, California 95014.

## JURISDICTION AND VENUE

5.    The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, The California Uniform Trade Secret Act §§ 3426 – 3426.11, the Federal Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq (*where jurisdiction is conferred pursuant to Sections 1338(a) and 1338(b) of the Judicial Code (28 U.S.C. §§ 1338 (a), 1338(b); where the venue is under Sections 1391(c) and 1400(a) of Judicial Code (28 U.S.C. §§ 1391(c), 1400(a)))*. This court also has jurisdiction pursuant to violations of 18 U.S.C. § 1962(d) and to the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. No 104-153 § 3, 110 Stat. 1386 of the Racketeer Influenced and Corrupt Organizations Act (*RICO*).

## FACTS

INTRODUCTION

In August of 1989, Plaintiff, "WAKEFIELD" won The Congressional Art Award, after placing first in the 17th Congressional District Arts Competition which Congressman William Lehman sponsored. "WAKEFIELD'S" artwork was displayed for one year in a corridor of the U.S. Capitol. A special reception honoring "WAKEFIELD" was held on

Capitol Hill where he was honored by Congressman William Lehman, entertainment film stars Robert Downey, Jr. and Sarah Jessica Parker.

During the time where "WAKEFIELD" interacted with Congressman William Lehman, as a part of the ceremony and award, "WAKEFIELD" confided in him and asked Congressman Lehman to write a letter to The Washington and North Miami Field Offices of the FBI notifying them that "WAKEFIELD" would be calling to disclose his trade secrets to the FBI, some of which "WAKEFIELD" believed constituted National Security issues. These trade secrets included the portable digital media device iPod™, the music/media management software application process iTunes™ (*iTunes™ Store*), and what "WAKEFIELD" referred to as iPhone™ (*a Smart Mobile Phone, with a Smart Screen™ Interface*), iBOONKA!™ a cartoon character used as a mobile Smart Toy, The *ClickVideoShop*™ software application process utilizes various media, including video, and Multifunctional Hotspots™. Other trade secrets were contained in "WAKEFIELD'S" sketch book and documented by "WAKEFIELD" in his visual art pieces. "WAKEFIELD" also requested that the Congressman "invest" in him and provide him with oversized canvases, a professional sketch book, supplies, & shatter proof/waterproof framing, so that he could create large visual art and a detailed sketch book of the various trade secrets that he created. He also requested that the FBI seize the art (*the oversized art and the sketch book*) that he created at New World School of the Arts during 1990 – 1991, that portrayed these trade secrets and requested that the discussion and information be maintained in the highest confidence because of the National Security ramifications that

4

concerned "WAKEFIELD." Congressman Lehman agreed to "WAKEFIELD'S" requests and during the period 1989 – 1990 had his assistant, Mrs. Tonya Martin (*who later married and took the name Mrs. Tonya Martin-Pekel*) create the letter which contained the names, a brief description of "WAKEFIELD'S" trade secrets, notice of "WAKEFIELD'S" intention of contacting the agency, and instruction to seize the art which contained the visual representations of "WAKEFIELD'S" trade secrets that would be created by "WAKEFIELD."

"WAKEFIELD" created the oversized art and sketch book of his trade secrets during 1990 – 1991 at New World School of the Arts located at 25 North East 2nd Street in Miami, Florida and persons during this same time period, representing themselves as FBI agents seized "WAKEFIELD'S" art and sketch book from the school.

"WAKEFIELD" made telephonic and personal contact with various Field Offices of The FBI to document, and report his trade secrets, business intentions, planned alliances/strategies to commercialize, and the theft of his intellectual rights during the following years: 1990, 1991, 1993, 1999, 2000, 2002, and other years to date.

During the ceremony in 1989 and years after "WAKEFIELD" developed a friendship with Defendant Entertainer Sarah Jessica Parker "SJP" and was graced with her appearance at New World School of the Arts, Norland Senior High School, The University of Florida, in Miami, and on "WAKEFIELD'S" internships/co-ops while he attended college.

"WAKEFIELD" over the course of several years made a trade secret deal with

"SJP" to commercialize his trade secrets iPod™ (*including all models…classic, nano, mini, shuffle, video, touch, and photo*), iTunes™ (*iTunes™ Store*), the iPhone™, and other products and brands that "WAKEFIELD" created. In the agreement made with "SJP" "WAKEFIELD" was to be paid 2% of the gross revenues (*Past and Future*) generated by ALL of the iPod™, iTunes™ (*iTunes™ Store*), and iPhone™ products and their constituent services and applications, including accessories sold by Apple Inc., or sold by authorized third parties through license. In the agreement made with "SJP," "WAKEFIELD" was to be paid for past sales of iPOD™, iTunes™, and the accessories including the iPhone™ after the release of the first iPhone™ product line.

On October 27, 2006, by email, Ira Schreck, Esq. in care of "SJP" wrote that Ms. Parker has no recollection of the agreement or matters concerning iPod™ and "WAKEFIELD'S" trade secrets. The Defendants were put on formal Notice by "WAKEFIELD" of the theft of his intellectual rights on October 19, 2009, by Express Mail.

6.    Plaintiff, "WAKEFIELD," an individual inventor, innovator, and the iPod™, iTunes™ (*iTunes™ Store*), and iPhone™ trade secrets owner, brings this action to enjoin Defendants from the continued misappropriation of his trade secrets being commercialized in the open market through the design, development, manufacture, marketing, and sale of the iPod™, iTunes™ (*iTunes™ Store*), and iPhone™ product lines. "WAKEFIELD" is informed and believes, and based thereon alleges that Defendants have

6

COMPLAINT                                U. S. District Court Central District

disclosed, and continue knowingly and willfully to disclose and misappropriate, proprietary information on their Internet websites, and in their marketing, advertising, and sales campaigns. Thus causing harm to "WAKEFIELD."

7.    The named Defendants, continue their unauthorized misappropriation and infringement, which they either obtained by improper means or knew or should have known was obtained by other(s) by improper means; despite the fact of "WAKEFIELD'S" written DEMAND for payment and cease and desist were sent to the Defendants; he has yet to receive payment, communication, or a response to his letters.

8.    Defendants' actions by transmitting, manufacturing, & selling "WAKEFIELD'S" trade secrets has threatened the financial stability of the broadcasting, digital media device, and software industries and has undermined The Constitution of the United States, Article I, § 8 which states that:

"The Congress shall have Power..to Promote the progress of Science and useful Arts, by securing for limited times to Authors and Inventors the exclusive right to their respective Writings and Discoveries."

This limited grant is a means by which an important public purpose may be achieved. This purpose is also reinforced by California's Uniform Trade Secret Act. Moreover, if Defendants are not restrained and enjoined and if "WAKEFIELD" is not properly compensated for the misappropriation & commercialization of his trade secrets and

copyrights, it will be a crippling domino effect to the future of technological innovation in the broadcasting, the consumer electronics, and the software industries, and it will be a fatal blow to the independent innovator and entrepreneur in America, the cornerstone of The American Economy and its historical foundations.

ALLEGATIONS

9.     On January 9, 2001, Apple Inc. introduced iTunes™ an ambidextrous management software application created and used to organize, store, playback, access, and transfer music, video, and various media data onto digital media devices from desk-top computers. On October 23, 2001, Apple Inc. launched a product with an enticing promise: You can carry an entire music collection in your pocket. It was called the iPod™. On June 29, 2007, Apple Inc. released the iPhone™ a mobile smart phone with a signature touch screen interface. "WAKEFIELD'S" trade secret ergonomic designs, techniques and processes were misappropriated and incorporated in the products to create a sleek and "sexy" bundle of digital media devices and software applications that would make it effortless to communicate, carry, manage, access, and use digital information. "WAKEFIELD'S" detailed trade secret product specifications and marketing method was communicated by "SJP" to the Defendant Steve Jobs, "Jobs," and employed in the open market by the Defendant Apple Inc., "Apple."

10.     Before allowing his trade secrets and copyright works to be used by the Defendants,

"WAKEFIELD" in confidence documented his trade secrets with the Congressman William Lehman and the Federal Bureau of Investigations. "WAKEFIELD" also requested that The FBI seize his visual art and sketch book which contained the documented secrets and requested that the FBI surveil and record him as he completed the trade secret deals to commercialize the secrets into products with "SJP" and other representatives. "WAKEFIELD" communicated the trade secret deal with the Defendant "SJP," his trade secrets, which includes the IDENTICAL name brands for iPod™, iTunes™ (*iTunes™ Store*), and the iPhone™, along with drawings and paintings of the IDENTICAL product designs and various models in various views, and provided description of the device products and processes, their method, technique and process of functionality to Congressman William Lehman in 1989, and the FBI in 1990, 1991, 1993, 1999, 2000, 2002, and other years to date.

11.    As of September 9, 2009, more than 220,000,000 iPods™ have been sold worldwide, making it the best-selling digital audio player series in history. As of the date June 19, 2008, Apple reported that music sales on its iTunes™ Store topped 5 billion songs and that visitors are renting and purchasing more than 50,000 movies each day. Apple sold 6.1 million original iPhone™ units over five quarters. The company sold 3.8 million iPhone™ 3G units in the second quarter of fiscal 2009, ending March 2009, totaling 21.4 million iPhones™ sold to date. Sales in Q4 2008 surpassed temporarily those of Rim's Blackberry sales of 5.2 million units, which made Apple briefly the third largest

COMPLAINT                                        U. S. District Court Central District

mobile phone manufacturer by revenue, after Nokia and Samsung.

12.    "WAKEFIELD'S" trade secret ergonomic designs, techniques and processes which was created in as early as 1989 were misappropriated by the Defendants and incorporated into these aforementioned products (the iPod™, iTunes™ (*iTunes™ Store*), and iPhone™ product lines) to create a sleek and "sexy" bundle of digital media devices and software applications that would make it effortless to communicate, carry, manage, access, and use digital information. "WAKEFIELD'S" detailed trade secret product specifications and marketing methods which was created during the time period 1990 – 1991 is currently being used illegally by the Defendants in the commercialization of the iPod™, iTunes™ (*iTunes™ Store*), and iPhone™ product lines.

FIRST CAUSE OF ACTION

BREACH OF AN ORAL CONTRACT MADE IN FLORIDA
(*Statute of limitations: 4 years in Florida for enforcing an Oral Contract*)

13.    "WAKEFIELD" repeats and realleges the allegations of paragraphs 1 through 12 of this Complaint and incorporates them herein by reference.

14.    During the years 1999 – 2000, Plaintiff Franz A. Wakefield, "WAKEFIELD," and the Defendant Sarah Jessica Parker, "SJP," orally agreed in Gainesville and Miami, Florida as follows:

10

a.    Plaintiff, "WAKEFIELD," would tender his trade secrets and copyrighted works related to the commercialization of the iPod™, iTunes™ (*iTunes™ Store*), and the iPhone™ product lines in confidence to "SJP" in drawings and recorded discussions; and allow any of his intellectual property relating to these products already in the possession of "SJP" based on her visits and documentation of "WAKEFIELD" while he completed his art work and performances at New World School of the Arts in Miami, Florida during 1990 – 1991 to remain in her custody for the purpose of presenting the products to Steve Jobs, CEO and Cofounder of Apple Inc. to determine if he and the company would be interested in creating a business deal to commercialize the products.

b.    Defendant, Sarah Jessica Parker, "SJP," would:

1.    Create a marketing company that would create in confidence a marketing presentation of "WAKEFIELD'S" trade secrets and copyrighted works.

2.    Attempt to commercialize iPod™, iTunes™ (*iTunes™ Store*), and iPhone™ by approaching Steve Jobs directly for business alliance, contingent on "JOBS" and Apple's, "APPLE'S" acceptance of the requirements set by "WAKEFIELD'S" trade secrets and the agreed payment of "WAKEFIELD" 2% of the gross

11

revenues generated by ALL of the iPod™, iTunes™ (*iTunes™ Store*), and iPhone™ product lines, their constituent services and applications, including accessories sold by Apple Inc., or sold by authorized third parties through license.

3.    Sell digital songs a la carte utilizing iTunes™ and the iTunes™ Store at $0.99 (which may increase based on statistical studies).

4.    Maintain an interest bearing forensically accounted bank account with "WAKEFIELD'S" funds until the release of the first iPhone™ product line.

5.    Be paid a percentage on top of "WAKEFIELD'S" 2% for brokering the deal which should not exceed 5% in total.

15.    "WAKEFIELD" performed said agreement to the extent necessary to require that the Defendant(s) follow "WAKEFIELD'S" trade secret methods, and device for creating the products and payment of "WAKEFIELD."

16.    Defendant "SJP" has breached said agreement by misappropriating, and Disseminating/transmitting "WAKEFIELD'S" trade secrets, copyrights, and intellectual property and by failing to compensate "WAKEFIELD" as agreed.

## SECOND CAUSE OF ACTION

## MISAPPROPRIATION OF TRADE SECRETS
(As Governed by the California Uniform Trade Secrets Act §§ 3426 – 3426.11)

17.    "WAKEFIELD" repeats and realleges the allegations of paragraphs 1 through 16 of this Complaint and incorporates them herein by reference.

18.    "WAKEFIELD" has adopted reasonable measures as described above to maintain the secrecy of his trade secrets relating to the portable digital media device iPod™, the music/media management software application process iTunes™ (*iTunes™ Store*), and what "WAKEFIELD" referred to as iPhone™ (*a Smart Mobile Phone, with a Smart Screen™ Interface*), iBOONKA!™ a cartoon character used as a mobile Smart Toy, The *ClickVideoShop*™ software application process which utilizes various media, including video, and Multifunctional Hotspots™ and other trade secrets which were contained in "WAKEFIELD'S" sketch book and documented by "WAKEFIELD" in his visual art pieces.

19.    The Defendants have invested substantial money in the development, manufacture, marketing, sale, and distribution of the iPod™, iTunes™ (*iTunes™ Store*), and the iPhone™ product lines, which have generated substantial revenues, accolades, and accomplishments in the International Market. "WAKEFIELD'S" trade secrets as embodied in the iPod™, iTunes™ (*iTunes™ Store*), and the iPhone™ product lines

derives substantial independent economic value both actual and potential from not being known and incorporated in other competing products, from not being generally known to, and not being readily ascertainable by proper means by other persons or entities who can obtain economic value from its disclosure or use.

20.    "WAKEFIELD'S" trade secrets as embodied in the iPod™, iTunes™ (*iTunes*™ *Store*), and the iPhone™ product lines are valuable proprietary property of "WAKEFIELD."

21.    Defendants have been put on written Notice, knew, and should have known when they disseminated, transmitted, accepted, designed, marketed, manufactured, and sold iPod™, iTunes™ (*iTunes*™ *Store*), and the iPhone™ without compensating "WAKEFIELD," that it was an unauthorized use of "WAKEFIELD'S" trade secrets, copyrights and other intellectual property.

22.    Defendants actions as described herein constitutes the willful misappropriation of "WAKEFIELD'S" trade secrets.

23.    As a result of the Defendants' misappropriation of "WAKEFIELD'S" trade secrets, "WAKEFIELD" has suffered and continues to suffer irreparable injury, for which there is no adequate remedy at law.

14

24.    Unless enjoined by the Court, Defendants will continue their misappropriation of "WAKEFIELD'S" trade secrets by the commercialization of iPod™, iTunes™ (*iTunes*™ *Store*) and iPhone™ in the International Market.

## THIRD CAUSE OF ACTION

### VIOLATION OF RACKETEER INFLUENCED & CORRUPT ORGANIZATIONS ACT
(Pursuant to 18 USC § 1962 (d) & The
Anticounterfeiting Consumer Protection Act of 1996)

25.    "WAKEFIELD" repeats and realleges the allegations of paragraphs 1 through 24 of this Complaint and incorporates them herein by reference.

26.    Sometime during March of 1996, "WAKEFIELD" completed an original software process, and technique named *ClickVideoShop*™ (1. Copyright Registration: Txu1-269-446), in the year 2000 he completed a 3D Digital character design called "iBOONKA!"™ (2. Copyright Registration: Vau 489-900), and in the year 2000 "WAKEFIELD" completed a technique and process for "iBOONKA!"™ the mobile smart toy (3. Copyright Registration: Txu 1-005-910); which was derived from "WAKEFIELD'S" trade secrets that he created in as early as 1989 and was document with Congressman William Lehman. "WAKEFIELD" received a patent (U.S. Patent No: 007,162,696 B2) for the software invention *ClickVideoShop*™ on January 09, 2007. Collectively copyrights 1 – 3 comprise the "infringed original copyrighted works."

Said "infringed copyrighted works" was the original effort of "WAKEFIELD" and

15

represented the use of his skill, judgment and labor. Immediately after completion of said "infringed copyrighted works" Plaintiff, "WAKEFIELD" fixed the "original copyrighted works" in a tangible medium:

      1. On or about April 30, 1996 the ClickVideoShop™ Software was fixed in the form of a tape,

      2. In July of 2000 the 3D Digital character design of "iBOONKA!"™ was completed and fixed in the form of a CD and print, and

      3. On August 6, 2001, "iBOONKA!"™ the mobile smart toy technique and process was fixed in the form of a floppy disk and print.

The fixed copies of said "infringed original copyrighted works," was made and deposited with the Registrar of Copyrights before such "original copyrighted works" was publicly performed or otherwise published. "WAKEFIELD" has complied with all requirements of the Federal Copyright laws with respect to fixation and publication.

27.    Defendants have willfully and criminally infringed "WAKEFIELD'S" copyrights as described by the Racketeer Influenced and Corrupt Organizations Act (RICO) pursuant to 18 USC § 1962(d) & the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104 – 153 § 3, 110 STAT. 1386; when they misappropriated "WAKEFIELD'S" trade secrets and intellectual property and commercialized the entire iPod™, iTunes™ (*iTunes Store*) and iPhone™ product lines.

28.    The Defendants knowingly infringed "WAKEFIELD'S" copyrights by manufacturing and placing on the market the iPod™, iTunes™ (*iTunes Store*) and iPhone™ product lines, which contains a substantial portion of "WAKEFIELD'S" copyrighted works, namely the use of Multifunctional Hotspots as described by the *ClickVideoShop*™ copyright without first obtaining a license. **See. Exhibits 1 – 4.**

## PRAYER FOR RELIEF

WHERFORE, "WAKEFIELD" prays for judgment:

1.    That Defendants have willfully misappropriated the trade secrets (*by breaching an oral contract made between "WAKEFIELD" and "SJP" in Florida*) of "WAKEFIELD," and have violated the Racketeer Influenced and Corrupt Organizations Act (*RICO and RICO Copyright Infringement*).

2.    Entering a temporary restraining order and preliminary and permanent injunctions, enjoining and restraining (*to stop the copying, duplicating, licensing, selling distributing, publishing and otherwise marketing*) Defendants, their officers, directors, principles, agents, servants, employees, attorneys, successors and assigns and all those acting in concert, combination or participation with any of them either directly or indirectly, singly or together, from making any further use or otherwise disclosing or distributing any proprietary and trade secret information, related to "WAKEFIELD'S" trade secrets iPod™, iTunes™ (*iTunes™ Store*) and iPhone™.

17

3.  Awarding to "WAKEFIELD" the costs of this action, reasonable attorneys fees, and such further and other relief as is found just and proper.

Respectfully submitted,

Dated:  October 26, 2009

**Franz A. Wakefield,** *Pro Se*
**COOLTvNETWORK.COM™, Inc.**
**Powered By:** *C l i c k V i d e o S h o p ™*
**The Software Enabling The Global Economy**
**And Its' Just A Click Away!**
**The** *ClickVideoShop ™* **Patent: U.S. 007,162,696 B2.**
**17731 North West 14ᵗʰ Court**
**Miami, Florida 33169**
**Tele: (305) + 206.4832**
**franzwakefield@cooltvnetwork.com**



**Attached Exhibits**

18

# CERTIFICATE OF SERVICE

**CASE NAME:**

*FRANZ A. WAKEFIELD, v. APPLE INC. AND SARAH JESSICA PARKER*

**CASE NO:**

I CERTIFY THAT ON <u>OCTOBER 26, 2009</u> A COPY OF THE <u>COMPLAINT</u> WAS SERVED, BY EXPRESS U.S. MAIL AND BY FIRST CLASS MAIL ON THE PERSONS/ENTITY LISTED BELOW IN THE <u>SERVICE LIST</u>.

*PRO SE*, PLAINTIFF

COMPLAINT            --            U. S. District Court Central District

1

## PROOF OF SERVICE

2

I, *Pro Se* **PLAINTIFF,** MR. FRANZ A. WAKEFIELD, AM OVER THE AGE OF 21 AND

3

AM THE PRO SE APPELLANT IN THIS ACTION. MY ADDRESS IS 17731 NORTH WEST 14TH

4

COURT MIAMI, FLORIDA 33169.

5

6

7

ON **October 26, 2009**, I SERVED IN THE MANNER INDICATED BELOW, THE

8

FOREGOING DOCUMENT(S) DESCRIBED AS:

9

## COMPLAINT

10

11

ON THE PARTY IN THIS ACTION AND FILING THE SAME WITH THE UNITED STATES

12

DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA BY PLACING A TRUE AND

13

CORRECT COPY THEREOF ENCLOSED IN A SEALED ENVELOPE ADDRESSED AS

14

FOLLOWS:

15

### "SEE ATTACHED **SERVICE LIST**"

16

17

18

(XX) (BY **EXPRESS MAIL &** **FIRST CLASS U.S. MAIL**) I *PRO SE* APPELLANT, CAUSED

19

SUCH ENVELOPE TO BE DEPOSITED WITH THE UNITED STATES POST OFFICE IN MIAMI,

20

FLORIDA, WITH POSTAGE THEREON FULLY PREPAID.

21

22

23

24

25

26

27

28

- - - COMPLAINT                                              -- -     U. S. District Court Central District

1

## Service List

"WAKEFIELD" vs. APPLE INC. & SARAH JESSICA PARKER

3

| CASE №: |
| --- |

5

6   **CLERK OF THE COURT**

7   **PRO SE UNIT , ROOM G-19**

8   **312 NORTH SPRING STREET**

9   **LOS ANGELES, CALIFORNIA 90012**

10

11  **STEVE JOBS, CEO AND COFOUNDER**

12  **APPLE INC.**

13  **1 INFINITE  LOOP**

14  **CUPERTINO, CALIFORNIA 95014**

15  **TELE: 800-275-2273**

16

17  **IRA SHRECK, ESQ.**

18  **IN CARE OF SARAH JESSICA PARKER**

19  **SHRECK ROSE DAPELLO & ADAMS & HURWITZ LLP**

20  **1790 BROADWAY 20TH FLOOR**

21  **NEW YORK, NEW YORK 10019**

22  **TELE: 212-832-1977**

23

24

25

26                      Franz A. Wakefield, *Pro  Se*

27

28

COMPLAINT                              U. S. District Court Central District

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

COMPLAINT     --     U. S. District Court Central District



October 19, 2009

Attention: <u>Mr. Steve Jobs, Cofounder and CEO</u>
Apple , Inc.
1 Infinite Loop
Cupertino, California 95014
M: 800-275-2273
F:  800-510-2834

  Cc: Apple Legal Department.

*Via: Federal Express on October 19, 2009:  EG 172326407 US*

Dear Mr. Jobs,

  I am writing this letter to inform you that I have not been paid for my trade secrets commercialized by Apple Inc. in the design and functionality of the entire Ipod™, iTunes™, and iPhone™ product lines.

  As agreed with the Entertainer Sarah Jessica Parker in a trade secret deal made in Florida to commercialize my trade secrets of the digital media products that I called Ipod™ (*including all models...classic, nano, mini, shuffle, video, touch, and photo*), iTunes™, and the iPhone™; I am due in monetary compensation 2% of the gross revenues (*Past and Future*) generated by ALL of these products and their constituent services and applications, including accessories sold by Apple Inc., or sold by authorized third parties.

  Based on a communication letter received from the legal counsel of the Entertainer Mrs. Sarah Jessica Parker (<u>See</u>. Exhibit "1") on October 27, 2006; I believe that my trade secrets have been stolen. This letter is to serve as notice that I have not been paid and that my trade secrets have been stolen and are being used by Apple Inc. in the commercialization, design, manufacture, marketing, and sale of the entire product lines of iPOD™, iTUNES™, and the iPHONE™.

  Please be aware that I communicated my trade secrets, which includes the IDENTICAL name brands for iPod™, iTunes™, and the iPhone™, along with drawings and paintings of the IDENTICAL product designs and various models in various views, and provided description of the products, their functionality, and the

object code to Congressman William Lehman in 1989, and The FBI in 1990, 1991, 1993, 1999, 2000, 2002, and other years to date.

Since I have not authorized you or your company to file patents on these products, make, or sell any iPOD™, iTunes™, or iPhone™ product without compensating me, it follows that you are breaking the law. In the agreement made with Sarah Jessica Parker I was to be paid for past sales of Ipod™, iTunes™, and the accessories including the iPhone™ after the release of the first iPhone™ product line. That has not happened and I have reported this to The North Miami, Los Angeles, and Washington Field Offices of The FBI. (See. Exhibit "2")

I have also put in motion various requests utilizing, the Freedom of Information Act, to The various FBI Field Offices, and The National Archives and Records Administration (NARA) to obtain the original records and art that will prove that I created and took measures to protect my trade secrets in as early as 1989.

This letter is to serve as a DEMAND for payment. Otherwise I will seek legal recourse for the immediate cease and desist from the manufacture, marketing, and sale of all the iPOD™, iTunes™, and Iphone™ product lines; along with pursuing damages from the products sold to date, unjust enrichment caused by the theft, enforcement of the agreed 2% of gross revenues on all sales, and any other applicable damages or compensation.

Please respond to this letter by October 27, 2009, so that we may resolve this matter.


Sincerely,

Franz A. Wakefield
President & Chief Product Design Engineer
COOLTvNETWORK.COM™, Inc.
The Company Bringing *ClickVideoShopping*™
To The Global Economy; And It's Just A Click Away!
United States Patent: 007,162,696 B2.
17731 North West 14th Court
Miami, Florida 33169
Tele: (305) + 206.4832
franzwakefield@cooltvnetwork.com                    Attached Exhibits 1 - 2


24



**October 19, 2009**

Attention: <u>Mr. Ira Shreck, Esq.</u>
Shreck Rose Dapello Adams & Hurwitz LLP
1790 Broadway 20th Floor
New York, New York 10019
M: 212-832-1977
F: 212-832-2969

*In Care of : The Entertainer Mrs. Sarah Jessica Parker.*

*Via: Federal Express on October 19, 2009:  EH 995591322 US*

Dear Mr. Shreck,

     I am writing this letter to inform you that I have not been paid for my trade secrets commercialized by Apple Inc. in the design and functionality of the entire Ipod™, iTunes™, and iPhone™ product lines.

     As agreed with the Entertainer Sarah Jessica Parker in a trade secret deal made in Florida to commercialize my trade secrets of the digital media products that I called Ipod™ (*including all models...classic, nano, mini, shuffle, video, touch, and photo*), iTunes™, and the iPhone™; I am due in monetary compensation 2% of the gross revenues (*Past and Future*) generated by ALL of these products and their constituent services and applications, including accessories sold by Apple Inc., or sold by authorized third parties.

     Based on a communication letter received from you regarding your client, Entertainer Mrs. Sarah Jessica Parker (<u>See</u>. Exhibit "1") on October 27, 2006; I believe that my trade secrets have been stolen. This letter is to serve as notice that I have not been paid and that my trade secrets have been stolen and are being used by Apple Inc. in the commercialization, design, manufacture, marketing, and sale of the entire product lines of iPOD™, iTUNES™, and the iPHONE™.

     Please be aware that I communicated the trade secret deal with Mrs. Parker, my trade secrets, which includes the IDENTICAL name brands for iPod™, iTunes™, and the iPhone™, along with drawings and paintings of the IDENTICAL product designs and various models in various views, and provided

description of the products, their functionality, and the object code to Congressman William Lehman in 1989, and The FBI in 1990, 1991, 1993, 1999, 2000, 2002, and other years to date.

Since I have not authorized your client Mrs. Parker or Apple Inc. to file patents on these products, make, or sell any iPOD™, iTunes™, or iPhone™ product without compensating me, it follows that your client has broken the law. In the agreement made with Sarah Jessica Parker I was to be paid for past sales of Ipod™, iTunes™, and the accessories including the iPhone™ after the release of the first iPhone™ product line. That has not happened and I have reported this to The North Miami, Los Angeles, and Washington Field Offices of The FBI. (See. Exhibit "2")

I have also put in motion various requests utilizing, the Freedom of Information Act, to The various FBI Field Offices, and The National Archives and Records Administration (*NARA*) to obtain the original records and art that will prove that I created and took measures to commercialize, and protect my trade secrets in as early as 1989.

This letter is to serve as a DEMAND for payment. Otherwise I will seek legal recourse for the immediate cease and desist from the manufacture, marketing, and sale of all the iPOD™, iTunes™, and Iphone™ product lines; along with pursuing damages from the products sold to date, unjust enrichment caused by the theft, enforcement of the agreed 2% of gross revenues on all sales, and any other applicable damages or compensation.

Please respond to this letter by October 27, 2009, so that we may resolve this matter.

Sincerely,

Franz A. Wakefield
President & Chief Product Design Engineer
COOLTvNETWORK.COM™, Inc.
The Company Bringing *ClickVideoShopping*™
To The Global Economy; And It's Just A Click Away!
United States Patent: 007,162,696 B2.
17731 North West 14th Court
Miami, Florida 33169
Tele: (305) + 206.4832
franzwakefield@cooltvnetwork.com                                    Attached Exhibits 1 - 2

- EXHIBIT 1

# JENNER&BLOCK

August 9, 2006

Jenner & Block LLP    Chicago
919 Third Avenue    Dallas
37th Floor    New York
New York, NY 10022-3908    Washington, DC
Tel 212 891-1600
www.jenner.com

Joseph Diamante
Tel  212 891-1625
Fax  212 891-1699
jdiamante@jenner.com

Ira Schreck, Esq.
Schreck Rose & Dapello
660 Madison Avenue
10th Floor
New York, NY 10021

**Re:**   **Sarah Jessica Parker**

Dear Mr. Schreck:

We are writing to you in the hope that you can assist one of our clients, Franz Wakefield. Mr. Wakefield is an artist and innovator who resides in the Miami area. He is a creative, young man who has been honored in the past by Congress for his artistic work.

In 1989, he received an award as the first place winner in the Congressional District Art Competition. In honor of the recipients of these awards, a reception was held in Congress. At that time, one of your clients, Sarah Jessica Parker, presented the award to Mr. Wakefield (see enclosure). According to Mr. Wakefield, he developed a friendship with Ms. Parker. During the course of that relationship, Mr. Wakefield revealed to Ms. Parker information relevant to the development and marketing of the iPod by Apple Computers. We are writing on behalf of Mr. Wakefield to determine whether Ms. Parker has any recollection of whether Mr. Wakefield informed her of marketing and other information concerning the iPod. His request is to see if she could corroborate his claim that he had developed certain marketing and technical information prior to the launching of the iPod by Apple.

Mr. Wakefield has been unable to contact Ms. Parker but believes that if this issue is raised to her, she will recall Mr. Wakefield and his contribution to the iPod product. Our client will greatly appreciate it if you would see if Ms. Parker has any recollection of her discussions with Mr. Wakefield concerning iPod.

We thank you very much for your time and assistance.

Very truly yours,

Joseph Diamante

Enclosure

NEW_YORK_3890_1

28



Souvenir of Tour of the

## United States Capitol
### Washington, D.C.

CONDUCTED BY THE CAPITOL GUIDE SERVICE

---

**2D** THE MIAMI TIMES
Thursday, August 17, 1989



The 17th Congressional Arts Competition winner Franz Wakefield (center L) and Rep. William Lehman join film stars Robert Downey, Jr. (L.) and Sarah Jessica Parker (r.) at Capitol Hill reception honoring winning artists from around the country.

## Local Artist Honored

A promising young North Dade artist was honored recently in ceremonies in Washington, D.C.

Franz Wakefield, a 10th-grader at Miami Norland Senior High School-North Center for the Arts, was flown to Washington by Congressman William Lehman (D-N Dade) after placing first in the 17th Congressional District Arts Competition which Lehman has sponsored for the past several years.

The competition is open to high school artists through North Dade.

Wakefield won this year's event with his colored pencil drawing entitled "Self Portrait." His work will be displayed for one year in a corridor of the U.S. Capitol with those of other district winners from around the country. A special reception honoring the young artist was held on Capitol Hill.

## The Poet's Pen

### Lesson From A Death

As we lay to rest our brother, father, nephew, cousin, friend.

We ask you to learn from his death.

If you knew him well, you knew of his intelligence, charm and wit.

If you knew him well, you also that his intelligence, charm and wit

Were misdirected because of his loyalty to a powerful force.

Skip chose to follow a well-worn path and was destroyed by his decision.

Drugs are misleading and demanding.

They mislead Skip by promising him endless pleasure without consequence.

They demanded of him his intelligence, charm and wit to sustain his habit.

They mislead him by promising his a ride that he could end at his discretion.

They demanded of him his trust, his loyalty, and his promise.

That he would put no person or thing ahead of THEM. . . .

### You're Special
By KAREN MAYCOCK

You're special because you were born in this world.

You're special whether you're a boy or girl.

You're special everyday, every minute of the hour.

You're special whenever God picks your flower.

You're special when the skies are sunny or blue.

You're special when God sees you through.

You're special for as long as you have life.

You're special whether you're wrong or right.

So never worry about how special you are.

Always remember, believe it or not.

You're a very special person and what you need God's got.

### My Own World

## Florida Memorial Brings Back Upward Bound

The United States Department of Education has awarded a $140,000 Upward Bound Grant to Florida Memorial College, renewing a program that aims to strengthen high school students' academic skills and motivations necessary for academic success in school and beyond.

"This recent award makes possible the re-establishment of an Upward Bound Program at Florida Memorial College," said Barbara Edwards, vice president for development, announcing the grant. "The program is designed to enrich participating students' academic life and provide valuable learning experiences in a college environment."

The grant will provide for the participation of 50 high school students largely from inner-city high schools in the Greater Miami area, including Northwestern, Jackson, Edison, Miami Springs and Carol City. Although the program targets minorities, particularly from the Black and Hispanic communities, participation will be open to all students who meet the eligibility requirements.

Meanwhile, the college has been selected to participate in the Sears-Roebuck Foundation's 1989-90 "Teaching Excellence and Campus Leadership Award Program."

It is designed to recognize the nation's top educators and Florida Memorial will receive a $2,500 grant for faculty enrichment and development. Part of the grant will fund a faculty achievement award for resourcefulness and leadership.

### Editor's Quote Book

Ability is the art of getting credit for all the home runs somebody else hits.

*Casey Stengel*

**Important Dates In History**

## So

By R

### G

Appr
Count
year, 
everyb
hot su
the ma
will fa

The
ber a
inform
■ "Pre
are be
Count
before
■ "Stu
Sept. 
Sept. 
on Aug
your s
■ "Stu
proof 
tuber
Dade 
■ "Phy
good h
physic
routine
■ "Get
school
couns
advan

Very
their c
beginn
parent
able c
Good

**JENNER&BLOCK**

September 27, 2006

Jenner & Block LLP          Chicago
919 Third Avenue            Dallas
37th Floor                  New York
New York, NY 10022-3908     Washington, DC
Tel 212 891-1600
www.jenner.com

Joseph Diamante
Tel  212 891-1625
Fax  212 891-1699
jdiamante@jenner.com

Ira Schreck, Esq.
Schreck Rose & Dapello
660 Madison Avenue
10th Floor
New York, NY 10021

**Re:    Sarah Jessica Parker**

Dear Mr. Schreck:

As you are aware, I wrote to you on August 9, 2006 (see attached) concerning our client's friendship with Ms. Parker. I was wondering if you could raise the issue requested in our letter with Ms. Parker. Our client is hopeful that Ms. Parker can aid him.

We look forward to your response. Please feel free to call me.

Very truly yours,

Joseph Diamante

Enclosure

NEW_YORK_3890_1

# SCHRECK ROSE DAPELLO & ADAMS LLP

JAMES S. ADAMS
DAVID S. BERLIN
JOSEPH J. DAPELLO
ELISSA DONENFELD
ISAAC DUNHAM
ALLISON EMMETT
NANCY A. ROSE
IRA SCHRECK *

EMERSON E. BRUNS
OF COUNSEL

* ALSO ADMITTED IN CA

ATTORNEYS AT LAW
TELEPHONE 212-832-1977
FACSIMILE 212-832-2969

WRITER'S DIRECT DIAL
212-832-1956

WRITER'S EMAIL ADDRESS
ischreck@srdalaw.com

October 27, 2006

**BY EMAIL: jdiamante@jenner.com**

Mr. Joe Diamante
Jenner & Block
919 Third Avenue, 37th Floor
New York, NY 10022

Re:     **Franz Wakefield**

Dear Mr. Diamante:

I have spoken with Ms. Parker and she has no recollection of the matters raised in your letter.

Very truly yours,

Ira Schreck

IS/tr

- **EXHIBIT 2**



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**OCT 15 2007**

Mr. Franz A. Wakefield                    Re:    Appeal No. 07-2424
17731 NW 14th Court                              Request No. 1090303
Miami, FL 33169                                  ADW:SRO

Dear Mr. Wakefield:

You appealed from the action of the Washington Field Office of the Federal Bureau of Investigation on your request for access to certain records pertaining to yourself.

After carefully considering your appeal, I am affirming the FBI's action on your request. The FBI informed you that it could locate no records responsive to your request in its automated indices. I have determined that the FBI's response was correct, and that it conducted an adequate, reasonable search for records responsive to your request.

Although the FBI could locate no records responsive to your request at its Washington Field Office, my staff has looked into this and found that the Miami Field Office might have records responsive to your request. If you have not done so already, I suggest that you submit a new request directly to the Miami Field Office. See 28 C.F.R. §§ 16.3(a), 16.41(a) (2007) (requests for records held by FBI field offices must be submitted to the field offices directly). You may appeal any future adverse determination made by the FBI. The address for the Miami Field Office is:

> Federal Bureau of Investigation
> North Miami Beach Field Office
> 16320 Northwest Second Avenue
> North Miami Beach, FL 33169-6508

If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Janice Galli McLeod
Associate Director

33

FD-71 (Rev. 3-05-2003)

Complaint Form

NOTE: Hand print names legibly; handwriting satisfactory for remainder.

Indices☐ Negative ☒ See below

| Subject's name and aliases | Character of case |
|---|---|
| Nintendo (game software) Apple Computer (Ipod) Cordis Corp and other companies not yet identied | Theft Of Intellectual Rights |

| | |
|---|---|
| Address of Subject | Complainant ☐ Protect Source<br>**Franz Wakefield** |
| | Complaint received by SA _____ |
| | Field Office **Miami**   Telephone # _____ |
| | ☒ Personal  ☐ Telephonic  Date 10/16/2007 Time 2:00 pm |
| | Complainant's address and telephone number<br>1731 NW 14th Court Miami, FL<br>305 624 3282 (H) |
| | Complainant's DOB<br>08/31/1974 | Sex<br>Male |

b2
b6
b7C

| Subject's Description | Race | ☐ Male | Height | Hair | Build | Birth date and birth place |
|---|---|---|---|---|---|---|
| | Age | ☐ Female | Weight | Eyes | Complexion | Social Security Number |
| | Scars, marks and other data | | | | | |

| Employer | Address | Telephone |
|---|---|---|

Vehicle Description

**Facts of Complaint**

On 10/16/2007, Franz Wakefield contacted the FBI Miami Field Office to advise that several major corporations had stolen and utilized his ideas and intellectual property for their own software products and electronic merchandise. Wakefield stated that he had several meetings with different companies and had secured verbal agreements in place prior to the release of these companies licensed products. Wakefield claims that these companies are currently using ideas and concepts he originally conceived and patented, without the companies financially compensating him.

Wakefield stated that he initially spoke with the FBI WFO Office in

RM

Do not write in this space.

SA _____      292RJM01.71
(Complaint received by)

BLOCK STAMP

b6
b7C

34

approximately 1993 regarding a similar situation with property infringement. In addition, Wakefield contacted the FBI Miami Office to discuss trade secret infringements in 2000. Wakefield is currently seeking any and all communication records and documents with the FBI, in accordance with the Freedom of Information Act, in order to support his possible civil grievance against Nintendo, Cordis Corp and any other companies not yet identified.

The Duty Agent advised Wakefield that he should resubmit a request for the information to FBIHQ through the FBI Miami Division. Duty Agent stated he would not be able to provide documents to complainant as a matter of policy.

Wakefield, an Engineer, advised that he would obtain a court order to get the records.

2

35



**U.S. Department of Justice**

---

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

June 12, 2009

MR FRANZ A WAKEFIELD
17731 NORTH WEST 14TH COURT
MIAMI, FL 33169

FOIPA Request No.: 1127551- 001
Subject: LEHMAN, WILLIAM

Dear Mr. Wakefield:

This is in response to the Freedom of Information/Privacy Acts (FOIPA) request dated January 28, 2009.

In order to respond to our many requests in a timely manner, our focus is to identify responsive records in the automated and manual indices that are indexed as main files. A main index record carries the names of subjects of FBI investigations. A search of the Central Records System maintained at FBI Headquarters indicated that potentially responsive records have been sent to the National Archives and Records Administration (NARA). Since these records were not reviewed, it is not known if they are actually responsive to your request.

If you wish to review these potentially responsive records, send your request to NARA at the following address using file number 94-HQ-67296 as a reference:

National Archives and Records Administration
8601 Adelphi Road
College Park, MD 20740-6001

Enclosed for your information is a copy of the FBI File Fact Sheet.

Very truly yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure

36

 *National Archives and Records Administration*

*8601 Adelphi Road*
*College Park, Maryland 20740-6001*

June 30, 2009

Franz Wakefield
17731 North West 14th Court
Miami, FL 33169

Dear Mr. Wakefield:

This is in response to your Freedom of Information Act request of June 27, 2009, which was received in this office on June 26, 2009 (our reference number **NW 32379**).

We forwarded your request for RG 65, FBI File number 94-HQ-67296 to the appropriate office for further action.

The National Archives and Records Administration has limited authority to release national security or other sensitive information. Pursuant to 5 USC 552 (a)(6)(B)(iii)(III), if you have requested information of a restricted nature, in most cases it will be necessary to send copies of the documents to appropriate agencies for further review.

Please advise us of any change of address that may occur during the time that it takes to complete your case. In the event any correspondence to you from this office is returned as undeliverable, no forwarding address, we will presume you are no longer interested in pursuing the case and the case will be closed.

We will notify you as soon as the review of all parties is complete.

Sincerely,

THOMAS HAUGHTON
Archives Specialist
Special Access and FOIA Staff

37

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2



U.S. Department of Justice

Office of Information and Privacy

---

Telephone: (202) 514-3642                                    Washington, D.C. 20530

OCT 15 2007

Mr. Franz A. Wakefield                           Re:      Appeal No. 07-2424
17731 NW 14th Court                                       Request No. 1090303
Miami, FL 33169                                           ADW:SRO

Dear Mr. Wakefield:

You appealed from the action of the Washington Field Office of the Federal Bureau of Investigation on your request for access to certain records pertaining to yourself.

After carefully considering your appeal, I am affirming the FBI's action on your request. The FBI informed you that it could locate no records responsive to your request in its automated indices. I have determined that the FBI's response was correct, and that it conducted an adequate, reasonable search for records responsive to your request.

Although the FBI could locate no records responsive to your request at its Washington Field Office, my staff has looked into this and found that the Miami Field Office might have records responsive to your request. If you have not done so already, I suggest that you submit a new request directly to the Miami Field Office. See 28 C.F.R. §§ 16.3(a), 16.41(a) (2007) (requests for records held by FBI field offices must be submitted to the field offices directly). You may appeal any future adverse determination made by the FBI. The address for the Miami Field Office is:

Federal Bureau of Investigation
North Miami Beach Field Office
16320 Northwest Second Avenue
North Miami Beach, FL 33169-6508

If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Janice Galli McLeod
Associate Director

FD-71 (Rev. 3-05-2003)
Complaint Form

NOTE: Hand print names legibly; handwriting satisfactory for remainder.
Indices ☐ Negative ☒ See below

| Subject's name and aliases | Character of case |
|---|---|
| Nintendo (game software)<br>Apple Computer (Ipod)<br>Cordis Corp and other companies<br>not yet identied | Theft Of Intellectual Rights |

Complainant ☐ Protect Source
Franz Wakefield

Complaint received by **SA** [　　　　　]

Field Office **Miami**　　　　　Telephone # [　　　　]

☒ Personal　☐ Telephonic　Date **10/16/2007**　Time **2:00 pm**

b2
b6
b7C

| Address of Subject | Complainant's address and telephone number |
|---|---|
| | 1731 NW 14th Court Miami, FL<br>305 624 3282 (H) |

Complainant's DOB
**08/31/1974**

Sex
**Male**

**Subject's Description**

| | Race | ☐ Male | Height | Hair | Build | Birth date and birth place |
|---|---|---|---|---|---|---|
| | Age | ☐ Female | Weight | Eyes | Complexion | Social Security Number |

Scars, marks and other data

| Employer | Address | Telephone |
|---|---|---|

Vehicle Description

**Facts of Complaint**

　　　On 10/16/2007, Franz Wakefield contacted the FBI Miami Field Office to advise that several major corporations had stolen and utilized his ideas and intellectual property for their own software products and electronic merchandise. Wakefield stated that he had several meetings with different companies and had secured verbal agreements in place prior to the release of these companies licensed products. Wakefield claims that these companies are currently using ideas and concepts he originally conceived and patented, without the companies financially compensating him.

　　　Wakefield stated that he initially spoke with the FBI WFO Office in

Do not write in this space.

RM

SA [　　　　　]　　292RJM01.71
(Complaint received by)

BLOCK STAMP

b6
b7C

approximately 1993 regarding a similar situation with property infringement. In addition, Wakefield contacted the FBI Miami Office to discuss trade secret infringements in 2000. Wakefield is currently seeking any and all communication records and documents with the FBI, in accordance with the Freedom of Information Act, in order to support his possible civil grievance against Nintendo, Cordis Corp and any other companies not yet identified.

The Duty Agent advised Wakefield that he should resubmit a request for the information to FBIHQ through the FBI Miami Division. Duty Agent stated he would not be able to provide documents to complainant as a matter of policy.

Wakefield, an Engineer, advised that he would obtain a court order to get the records.

2

41



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

June 12, 2009

MR FRANZ A WAKEFIELD
17731 NORTH WEST 14TH COURT
MIAMI, FL 33169

FOIPA Request No.: 1127551- 001
Subject: LEHMAN, WILLIAM

Dear Mr. Wakefield:

This is in response to the Freedom of Information/Privacy Acts (FOIPA) request dated January 28, 2009.

In order to respond to our many requests in a timely manner, our focus is to identify responsive records in the automated and manual indices that are indexed as main files. A main index record carries the names of subjects of FBI investigations. A search of the Central Records System maintained at FBI Headquarters indicated that potentially responsive records have been sent to the National Archives and Records Administration (NARA). Since these records were not reviewed, it is not known if they are actually responsive to your request.

If you wish to review these potentially responsive records, send your request to NARA at the following address using file number 94-HQ-67296 as a reference:

National Archives and Records Administration
8601 Adelphi Road
College Park, MD 20740-6001

Enclosed for your information is a copy of the FBI File Fact Sheet.

Very truly yours,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Records Management Division

Enclosure

42

 **National Archives and Records Administration**

8601 Adelphi Road
College Park, Maryland 20740-6001

June 30, 2009

Franz Wakefield
17731 North West 14th Court
Miami, FL 33169

Dear Mr. Wakefield:

This is in response to your Freedom of Information Act request of June 27, 2009, which was received in this office on June 26, 2009 (our reference number **NW 32379**).

We forwarded your request for RG 65, FBI File number 94-HQ-67296 to the appropriate office for further action.

The National Archives and Records Administration has limited authority to release national security or other sensitive information. Pursuant to 5 USC 552 (a)(6)(B)(iii)(III), if you have requested information of a restricted nature, in most cases it will be necessary to send copies of the documents to appropriate agencies for further review.

Please advise us of any change of address that may occur during the time that it takes to complete your case. In the event any correspondence to you from this office is returned as undeliverable, no forwarding address, we will presume you are no longer interested in pursuing the case and the case will be closed.

We will notify you as soon as the review of all parties is complete.

Sincerely,

THOMAS HAUGHTON
Archives Specialist
Special Access and FOIA Staff

43

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

COMPLAINT                                    U. S. District Court Central District



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

**TXu 1 – 269 – 446**

EFFECTIVE DATE OF REGISTRATION

Jun   9   2005
Month    Day    Year

---

RATE CONTINUATION SHEET.

**1**
TITLE OF THIS WORK ▼
  The ClickVideoShop(TM) Software

PREVIOUS OR ALTERNATIVE TITLES ▼
  CVSSW(TM) Software

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   Title of Collective Work ▼

| n/a | n/a | n/a | | |
|---|---|---|---|---|
| If published in a periodical or serial give: Volume ▼ | Number ▼ | Issue Date ▼ | On Pages ▼ | |

**2**

**a** NAME OF AUTHOR ▼
COOLTvNETWORK.COM(TM), INC.

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼
1999

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶   USA

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☑ Yes ☐ No
Pseudonymous? ☐ Yes ☑ No
*If the answer to either of these questions is "Yes," see detailed instructions.*

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
This work is the source code, object code, and description of The ClickVideoShop(TM) Software

**b** NAME OF AUTHOR ▼
COOLTvNetwork.com, Inc. employer for hire of Frinz A. Wakefield

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼
1974   n/a

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶   USA
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☑ Yes ☐ No
Pseudonymous? ☐ Yes ☑ No
*If the answer to either of these questions is "Yes," see detailed instructions.*

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Description of The ClickVideoShop(TM) Software

**c** NAME OF AUTHOR ▼
n/a

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶   n/a
Domiciled in ▶   n/a

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
*If the answer to either of these questions is "Yes," see detailed instructions.*

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3**

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given
1996 ◀ Year in all cases.

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK Complete this information ONLY if this work has been published.
Month ▶ n/a   Day ▶   Year ▶   ◀ Nation
n/a

**4**
COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
COOLTvNETWORK.COM(TM), INC. & Franz Antonio Wakefield
17731 North West 14th Court    17731 North West 14th Court
Miami, Florida 33169    Miami, Florida 33169

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
n/a   *by written agreement

APPLICATION RECEIVED
JUN 0 9 2005
ONE DEPOSIT RECEIVED
JUN 0 9 2005
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

See instructions before completing this space.

---

MORE ON BACK ▶   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
   • See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of _____ pages

# CERTIFICATE OF REGISTRATION



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

OFFICIAL ████████████

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE



**VAu 489-900**

**EFFECTIVE DATE OF REGISTRATION**

5  5  00
Month  Day  Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

## 1

**TITLE OF THIS WORK ▼**

"¡BOONKA!"

**NATURE OF THIS WORK ▼** See Instructions

3D Digital Character Design

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.  **Title of Collective Work ▼**

If published in a periodical or serial give:  **Volume ▼**    **Number ▼**    **Issue Date ▼**    **On Pages ▼**

## 2

**NAME OF AUTHOR ▼**

a  COOLTvNetwork.com, Inc.

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

1999

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

**Was This Author's Contribution to the Work**
Anonymous?    ☒ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See Instructions**
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☒ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

**NAME OF AUTHOR ▼**

b  COOLTvNetwork.com, Inc. employer for hire of Franz Antonio Wakefield

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼
1974    n/a

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

**Was This Author's Contribution to the Work**
Anonymous?    ☒ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See Instructions**
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☒ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

## 3

**Year in Which Creation of This Work Was Completed**
2000
◀ Year  This information must be given in all cases.

**b  Date and Nation of First Publication of This Particular Work**
Complete this information ONLY if this work has been published.
Month ▶    Day ▶    Year ▶
◀ Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

COOLTvNetwork.com
17731 N. W. 14th Ct.
Miami, Florida 33169

See instructions before completing this space

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

**APPLICATION RECEIVED**
MAY 15, 2000
**ONE DEPOSIT RECEIVED**
MAY 15, 2000
**TWO DEPOSITS RECEIVED**

**FUNDS RECEIVED**

---

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

# CERTIFICATE OF REGISTRATION

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below.The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

OFFICIAL SEAL

**FORM TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE
REGISTRATION NUMBER



TXu 1-005-910

EFFECTIVE DATE OF REGISTRATION

SEP 4 2001
Month   Day   Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**TITLE OF THIS WORK ▼**

"¡BOONKA!" iToy software flow diagram.

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   **Title of Collective Work ▼**

N/A

If published in a periodical or serial give   **Volume ▼**   **Number ▼**   **Issue Date ▼**   **On Pages ▼**

N/A

---

**NAME OF AUTHOR ▼**

COOLCartoons.com, Inc.   *employer for hire of Franz A. Wakefield

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

1999   N/A

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶   USA

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☒ Yes   ☐ No
Pseudonymous?   ☐ Yes   ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

Software flow diagram for "¡BOONKA!" the iTOY.

**NOTE**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes   ☐ No
Pseudonymous?   ☐ Yes   ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes   ☐ No
Pseudonymous?   ☐ Yes   ☐ No

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.

2000

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.   Month ▶   Day ▶   Year ▶   ◀ Nation

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

COOLCartoons.com, Inc.
17731 NW 14th CT
Miami, Florida 33169

**TRANSFER**

**APPLICATION RECEIVED**
SEP 04 2001
**ONE DEPOSIT RECEIVED**
SEP 04 2001
**TWO DEPOSITS RECEIVED**

**FUNDS RECEIVED**

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶**

DO NOT WRITE HERE
Page 1 of ___ pages

47

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 4

COMPLAINT                              U. S. District Court Central District

48

US007162696B2

(12) **United States Patent**
Wakefield

(10) **Patent No.:** **US 7,162,696 B2**
(45) **Date of Patent:** **Jan. 9, 2007**

(54) **METHOD AND SYSTEM FOR CREATING, USING AND MODIFYING MULTIFUNCTIONAL WEBSITE HOT SPOTS**

(76) Inventor: **Franz Wakefield**, 17731 NW. 14th Ct., Miami, FL (US) 33169

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 409 days.

(21) Appl. No.: **09/877,729**

(22) Filed: **Jun. 8, 2001**

(65) **Prior Publication Data**
US 2002/0080165 A1    Jun. 27, 2002

**Related U.S. Application Data**

(60) Provisional application No. 60/210,300, filed on Jun. 8, 2000.

(51) **Int. Cl.**
*G06F 3/00* (2006.01)
*G06F 9/00* (2006.01)
*G06F 17/00* (2006.01)

(52) **U.S. Cl.** ...................... 715/716; 715/733; 715/722; 715/719

(58) **Field of Classification Search** ................ 345/723, 345/726, 853; 370/401; 379/90.01, 93.07, 379/93.12, 93.14, 93.17; 704/240, 275; 705/26, 705/37; 707/3, 4, 5, 10, 104.1; 709/206, 709/218; 715/513
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,539,871 A | | 7/1996 | Gibson |
| 5,590,262 A | * | 12/1996 | Isadore-Barreca ....... 715/500.1 |
| 5,708,845 A | | 1/1998 | Wistendahl et al. |

| | | | | |
|---|---|---|---|---|
| 5,774,859 A | * | 6/1998 | Houser et al. ............... 704/275 |
| 5,838,682 A | * | 11/1998 | Dekelbaum et al. ........ 370/401 |
| 5,884,309 A | * | 3/1999 | Vanechanos, Jr. ........... 707/10 |
| 5,893,091 A | * | 4/1999 | Hunt et al. ..................... 707/3 |
| 5,905,975 A | * | 5/1999 | Ausubel ..................... 705/37 |
| 5,918,012 A | | 6/1999 | Astiz et al. |
| 5,970,504 A | | 10/1999 | Abe et al. |
| 6,021,398 A | * | 2/2000 | Ausubel ........................ 705/37 |
| 6,029,135 A | * | 2/2000 | Krasle .......................... 704/275 |
| 6,075,526 A | * | 6/2000 | Rothmuller ................. 715/721 |
| 6,122,647 A | * | 9/2000 | Horowitz et al. ........... 715/513 |
| 6,570,587 B1 | * | 5/2003 | Efrat et al. ................. 345/723 |
| 6,573,908 B1 | * | 6/2003 | Jang ............................ 715/723 |
| 2002/0069405 A1 | * | 6/2002 | Chapin et al. ................ 725/32 |

* cited by examiner

*Primary Examiner*—Kristine Kincaid
*Assistant Examiner*—Boris Pesin
(74) *Attorney, Agent, or Firm*—Franz Antonio Wakefied, Pro, Se.

(57) **ABSTRACT**

A method, apparatus and system for creating, using and modifying multifunctional website hot spots including software that identifies, programs and activates hot spots with a plurality of functions wherein the functions include a shopping mode for selecting and purchasing items on a website or in a video, a digital call mode for facilitating videoconferencing and telephone calls over a globally accessible network, a digital storage area for selecting, retrieving and playing selected digital media files, a bid mode that facilitates audio and video communication during multi-task communication interface for conducting an auction and/or accepting bids, an interact mode for communicating a user with a live streamed digital media file, a link mode for directly linking to pre-identified URL addresses and an entertain mode for retrieving and activating digital media files, wherein the functions are selected based on user inputs or predetermined parameters and are activated by clicking a predetermined hot spot.

**18 Claims, 9 Drawing Sheets**



CLICKVIDEOSHOP™
THE NEXT GENERATION INTERACTIVE SOFTWARE.

49